IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

MARVIN JAMES, #110142          )
                              )
        PLANTIFF,             )
                              )
                v.            )        CIVIL ACTION NO.2:05-CV-451-T
                              )
LEON FORNISS, WARDEN, *et al.,*  )
                              )
        DEFENDANTS,           )

## A F F I D A V I T

**State of Alabama**    :

**Elmore County**       :


Before me the undersigned authority, a Notary Public in and for said County and State of Alabama at large, personally appeared Annie Latimore, who being known to me and being by me first duly sworn, deposes and says on oath as follows:

My name is Annie Latimore.  I hereby certify and affirm that I am the Alternate Custodian of Records at Staton Correctional Facility, P.O. Box 56, Elmore, Alabama 36025.  I am over twenty-one years of age and am competent to testify to the matters stated herein.

The attached ***State of Alabama Department of Corrections Administrative Regulation number 311*** consisting of fourteen pages and copies of ***three different memos in reference to Pauper's Cemetery***. Consisting of four pages are true, and exact and correct photocopies of documents maintained here in the institutional files.

PENGAD-Bayonne,N.J.

**EXHIBIT**

2

I further certify and affirm that said documents are maintained in the usual and ordinary course of business at Staton Correctional Facility and that said documents and entries therein were made reasonably near the time that such acts, events and transactions referred to therein are said to have occurred.

_Annie Latimore_

ANNIE LATIMORE

SWORN TO and SUBSCRIBED before me this 22 day of June 2005.

_Margaline B. Diem_

NOTARY PUBLIC

12 - 6 - 08

My Commission Expires:

**STATE OF ALABAMA**

# DEPARTMENT OF CORRECTIONS

Research, Monitoring, & Evaluation
Post Office Box 301501
Montgomery, Alabama 36130-1501

FOB JAMES, JR.
GOVERNOR

Joe S. Hopper
COMMISSIONER

May 7, 1996

*Ch - 1*
*Ch - 2*

ADMINISTRATIVE REGULATION
NUMBER          311

OPR:  I & I

## HOMICIDE, SUICIDE, EXECUTION, ACCIDENTAL AND NATURAL DEATH REPORTING; INVESTIGATIONS, AUTOPSIES AND DISPOSITION OF DEAD BODIES

I.    **GENERAL**

This regulation establishes responsibilities and procedures for the handling of all deaths of inmates incarcerated in the Alabama Department of Corrections, reports, investigation, autopsy, and disposition of dead bodies.

II.   **RESPONSIBILITIES**

A.    Wardens or officers in charge, are responsible for notifying the following persons/agencies immediately upon the death of any inmate under his/her control.  (See Annex D concerning actions required for inmates with contagious diseases):

1.    Director, Investigation and Intelligence Division, or Investigator on call.

2.    Deputy Commissioner for Institutions

3.    Medical Director

4.    Chaplain

5.    Commissioner

NOTE:    The Department of Forensic Sciences/Medical Examiner Coroner and the appropriate District Attorney office will be notified by the Investigator.  The appropriate Sheriff's Department and/or the Department of Forensic

Sciences will be called by the Investigator or his designee and asked to assist when deemed necessary when serious bodily injury or death occurs as a result of an officer/inmate incident.

B.   Wardens will assure that a current listing of the names, agencies, phone numbers, etc., of persons to be notified in the event of a death, is readily available to permit such notification with minimum of delay.

C.   Wardens and the Director of Treatment of the Department of Corrections are responsible for assuring that their personnel know their responsibilities and that they properly carry out their duties.

D.   The Warden or officer-in-charge is responsible for immediately dispatching sufficient officers to protect and secure the death/crime scene until the Investigator arrives. The officers will obtain the names of all witnesses to the incident. One officer will be assigned to remain with the body until relieved of that responsibility by the Investigator in charge.

E.   Upon arrival, the Investigator will assume charge of the crime or death scene. It is emphasized that the assigned Investigator has complete authority at the scene and over all aspects of the investigation.

F.   The Alabama Department of Forensic Sciences/Medical Examiner Coroner is responsible for post-mortem examinations of all deceased inmates.

G.   Ultimate responsibility for notifying the Department of Forensic Sciences/Medical Examiner Coroner and arranging for the post-mortem examination of the body rests with the Investigator or his designee.

H.   The Prison Chaplain is responsible for notifying next-of-kin. He is also responsible for notifying the family when the body is released by the Department of Forensic Sciences. The Chaplain will offer to assist the family of the deceased in making burial arrangements.

I.   The next-of-kin is responsible for the disposition of the remains of the deceased by assuming responsibility for the burial or granting the Department of Corrections Authority to bury the deceased in a state cemetery. (See Annexes B and C)

J.   If institutional officials are unable to locate next-of-kin within 72 hours after death, the Warden of the respective facility will be notified and he will provide instructions concerning disposition of remains.

K.   The Department's Chaplain will conduct funeral services for deceased inmates whose bodies are not claimed by next-of-kin/friends. The institution having custody of the inmate shall make arrangements for interment. The local funeral home will be advised for preparation of the remains for burial. Costs for preparation of the remains will be the responsibility of the institution having custody at the time of death. If the body is buried at state expense and if the inmate was a veteran of the military, the appropriate agency will be contacted for possible reimbursement of burial allowance. (See Annex E)

L.   The Warden will prepare a memorandum giving specific time, day/date and location of interment. This memorandum will be forwarded to Central Records for insertion in deceased inmate's file and a copy to I & I.

M.   The Warden will assure that the deceased's personal property is properly inventoried and disposed of. A copy of the inventory and a report of the disposition will be sent to the Director of the Investigation and Intelligence Division.

## III.  PROCEDURES

A.   When an individual dies without having been attended or examined by a legally qualified physician; or when that person has been killed or suddenly dies under such circumstances which afford reasonable grounds for belief that such death has been occasioned by the action of another, by suicide, accident or unlawful means; the Coroner of the county in which the death occurred shall be notified by the Investigator or his designee. Under no circumstances will the body be moved without approval of the Coroner or designee.

B.   The Investigation and Intelligence Division of the Department of Corrections will be immediately notified of any inmate death. Should an incident occur during other than normal duty hours, the Investigator on call shall be immediately notified. Institutional personnel will provide all possible assistance to the Investigator, or Investigators working the case.

C.   In the instance of any inmate death, the Contract Medical Director or his designee, will assure that the original of any or all medical records of the deceased are provided as soon as possible so they may accompany the body to the pathologist.

D.   In the case of direct homicide, suicide, or death by accident or overdose, a description of the scene and circumstances will be provided to the pathologist by the Investigator. This information should be furnished prior to the autopsy, as this type of information can be beneficial to the pathologist in his attempt to find specific answers to questions relative to causes and circumstances of the death.

E.   Under no circumstances will the remains be released to a funeral home for embalming and burial preparation before an authorized autopsy is performed by the Department of Forensic Sciences/Medical Examiner Coroner.

F.   The prison physician or coroner will verify all deaths which occur at all institutions or facilities. In all cases where death occurs within the institution or in cases where those death-on-arrival (DOA) are received at the institution, the prison physician is responsible for verifying death and posting the medical record.

G.   The prison physician or county coroner, as appropriate, is responsible for completing and signing Form ADPH-HS/Revised 11/93, "Alabama, Certificate of Death" (Annex A). This Certificate of Death, after completion will be forwarded to the County Health Department of the county where the death occurred.

H.   Copies of all documents relating to the death or investigation (i.e., autopsy report, death certificate, etc.) will be forwarded to the Director, Investigation and Intelligence Division.

I.   The Director of the Investigation and Intelligence Division will forward all death investigations to the appropriate District Attorney for whatever action he/she deems appropriate.

J.   Investigation and Intelligence Division will forward the Medical File, Incident Report, and Autopsy Report to the Director of Treatment as soon as their investigation is complete, so the file may be scheduled for review by the Medical Advisory Committee. After the Medical Advisory Committee's review, the incident/investigative reports will be removed and the file returned to Medical Records at Kilby.

K.   Wardens or designee will contact Central Warehouse to obtain casket for state burial.

IV.   DEATHS RESULTING FROM EXECUTIONS

The procedure for disposition of dead bodies resulting from executions will be the same as outlined in Section III above.

V.   REFERENCES

A.   Administrative Regulation 408, "Notification of Next-of-Kin, Death, or Critical Illness of Inmate"

B.   Title 22-9-70; 22-9-71 and Title 22-19-22; 22-19-24, Code of Alabama, 1975

-4-

## VI.    SUPERSESSION

This regulation supersedes Administrative Regulation 311 dated July 20, 1984.

Joe S. Hopper, Commissioner (Acting)

## ANNEXES

| | |
|---|---|
| Annex A | ADPH-HS/Revised 11/93, "Alabama, Certificate of Death" |
| Annex B | "Determination of Responsibility for Disposition of Remains" |
| Annex C | "Release of Inmate Body to Next-of-Kin or to the Alabama Department of Corrections" |
| Annex D | "Action Required for Inmates with Contagious Diseases" |
| Annex E | VA Form 21-530, "Veterans Administration, Application for Burial Benefits" |

## SUMMARY OF CHANGES

Modifies responsibilities and procedures.  Clarifies the Department's responsibilities for embalming/burial of deceased inmates whose remains are not claimed by relatives.  Explains responsibilities of next-of-kin for remains being claimed by relatives.  Makes available a Veterans Administration application for burial benefits with instructions pertaining to eligible veterans.  Provides for inmates with contagious diseases to be identified and isolated from other inmates/employees.

# A L A B A M A
## CERTIFICATE OF DEATH

County File Number —

State File Number **101**

| 1 DECEASED—NAME   First       Middle       Last    Type last name all capitals) | 2 DATE OF DEATH (Month, Day, Year) | 3 COUNTY OF DEATH |
|---|---|---|

| 4 CITY, TOWN, OR LOCATION OF DEATH AND ZIP CODE | 5 INSIDE CITY LIMITS (Specify Yes or No) | 6 PLACE OF DEATH—HOSPITAL OR OTHER INSTITUTION—(If not in either, give street and number) |
|---|---|---|

| 7 IF HOSPITAL (Specify Inpatient, ER or Outpatient, DOA) | 8 OF HISPANIC ORIGIN (Specify Yes or No) If Yes, Specify Cuban, Mexican, Puerto Rican, etc. | 9 RACE—Specify American Indian, Black, White, etc.) | 10 SEX |
|---|---|---|---|

| 11 AGE   YRS. | UNDER 1 YEAR   MOS.   DAYS | UNDER 1 DAY   HOURS   MINS. | 13 DATE OF BIRTH (Month, Day, Year) | 14 DECEASED'S SOCIAL SECURITY NUMBER |
|---|---|---|---|---|

| 15 EDUCATION (Specify ONLY highest grade completed below)   Elementary or High School (0-12)   College (1-4 or 5+) | 16 MARITAL STATUS (Specify Married, Never Married, Widowed, Divorced) | 17 SURVIVING SPOUSE (If wife, give maiden name) | 18 Was Decedent ever in Armed Forces (Specify Yes or No) |
|---|---|---|---|

| 19 STATE OF BIRTH (If not in USA, name country) | 20 RESIDENCE—STATE | 21 COUNTY | 22 CITY, TOWN, OR LOCATION AND ZIP CODE |
|---|---|---|---|

| 23 INSIDE CITY LIMITS (Specify Yes or No) | 24 STREET AND NUMBER | 25 INFORMANT—Name and Address |
|---|---|---|

| 26 USUAL OCCUPATION (Give kind of work done during most of working life even if retired) | 27 KIND OF BUSINESS OR INDUSTRY |
|---|---|

| 28 FATHER—NAME   First       Middle       Last | 29 MAIDEN NAME OF MOTHER—   First       Middle       Last |
|---|---|

| 30 DISPOSITION OF BODY (Specify Burial, Cremation, Medical Donation, Hospital Disposal, Other) | 31 DATE OF DISPOSITION (Month, Day, Year) | 32 CEMETERY OR CREMATORY—Name | 33 LOCATION—City or Town—State) |
|---|---|---|---|

| 34 FUNERAL HOME—Name and Address | 35 FUNERAL DIRECTOR—Signature | 36 DATE SIGNED BY FUNERAL DIRECTOR |
|---|---|---|

| 37 __ Certifying Physician  (Physician certifying cause of death) "To the best of my knowledge death occurred at the time and date, and due to the cause(s) and manner stated." __ Medical Examiner __ Coroner  (On the basis of examination and/or investigation, in my opinion, death occurred at the time, date, place, and due to the cause(s) and manner stated." Signature: | 38 DATE SIGNED (Month, Day, Year) |
|---|---|

| 39 TIME AND DATE OF DEATH | 40 DATE AND TIME PRONOUNCED DEAD (For Coroner/M.E. use only) | 41 NAME AND TITLE OF PERSON WHO COMPLETED CAUSE OF DEATH (Item 46) |
|---|---|---|

| 42 ADDRESS OF PERSON WHO COMPLETED CAUSE OF DEATH (Item 46) | 43 CERTIFIER LICENSE NUMBER |
|---|---|

| 44 REGISTRAR— Signature | **For State or County use only** | 45 DATE FILED (Month, Day, Year) |
|---|---|---|

## MEDICAL CERTIFICATION

| 46 PART I  Enter the diseases, injuries, or complications that caused the death. Do not enter the mode of dying, such as cardiac or respiratory arrest, shock, or heart failure. LIST ONLY ONE CAUSE ON EACH LINE. | APPROXIMATE INTERVAL BETWEEN ONSET AND DEATH |
|---|---|
| IMMEDIATE CAUSE (Final disease or condition resulting in death) →   a. _____ | |
| DUE TO (OR AS A CONSEQUENCE OF): | |
| Sequentially list conditions, if any, leading to immediate cause. Enter UNDERLYING CAUSE (Disease or injury that initiated events resulting in death) LAST   b. _____ | |
| DUE TO (OR AS A CONSEQUENCE OF): | |
| c. _____ | |
| DUE TO (OR AS A CONSEQUENCE OF): | |
| d. _____ | |

| 47 PART II Other significant conditions contributing to death but not resulting in the underlying cause given in Part I. | 48 WAS THERE A PREGNANCY IN LAST 42 DAYS? (Specify Yes, No, or Unk.) |
|---|---|

| 49 MANNER OF DEATH (Specify—Accident, Homicide, Suicide, Undetermined Circumstances, Pending Investigation, Natural Cause) | 50 AUTOPSY (Specify Yes or No) | 51 If yes, were findings considered in determining cause of death? (Specify Yes or No) |
|---|---|---|

| 52 HOW INJURY OCCURRED (Enter nature of injury in Item 46, Part I or Item 47, Part II) | 53 DATE OF INJURY (Month, Day, Year) | 54 HOUR OF INJURY |
|---|---|---|

| 55 INJURY AT WORK (Specify Yes or No) | 56 PLACE OF INJURY—(Specify at home, farm, street, factory, office building, etc.) | 57 LOCATION OF INJURY (Street or R.F.D. No., City or Town, State) |
|---|---|---|

This is a legal record and must be filed within five (5) days after death.

ADPH-HS 2  Rev 11-9

Annex A to AR 311

_____
                                    DATE

## RELEASE OF INMATE BODY TO NEXT-OF-KIN
## TO BE SIGNED BY NEXT-OF-KIN

NAME OF INMATE _____     AIS NUMBER _____

DATE OF DEATH _____     PLACE OF DEATH _____

NAME OF NEXT-OF-KIN _____
                    SPECIFY KINSHIP

ADDRESS OF NEXT-OF-KIN _____

This is to certify that I am next-of-kin to the deceased inmate named above and I desire to claim the body of the deceased for burial. I understand that I am responsible for providing transportation and burial of the deceased and that such burial must be in accordance with all applicable State and Federal laws. I further understand that my action relieves the Alabama Department of Corrections of any and all responsibility for any further costs incurred in the transportation and burial of the deceased.

I swear/affirm that the information given above is true under penalty of perjury. I have read this release and understand it.

_____
Signature/Telephone Number

_____
Witness

Annex C to AR 311 (Page 1 of 2)

_____ DATE

### RELEASE OF INMATE BODY TO ALABAMA DEPARTMENT OF CORRECTIONS
### TO BE SIGNED BY NEXT-OF-KIN

NAME OF INMATE _____    AIS NUMBER _____

DATE OF BIRTH _____ PLACE OF DEATH _____

NAME OF NEXT-OF-KIN _____
_____ SPECIFY KINSHIP

This is to certify that I am the next-of-kin to the deceased inmate named above and that I do not wish to claim the deceased body and do not wish any other person to claim the body.

I understand that my action places the responsibility of burial of the deceased on the Alabama Department of Corrections and that such burial will be in accordance with the laws of the State of Alabama and will be in a cemetery owned by the Alabama Department of Corrections.

I hereby release the body of Inmate _____ to the Alabama Department of Corrections for burial.

I swear/affirm that the information given above is true under penalty of perjury. I have read this release and I understand it.

Ch-1  *Information required to complete this annex may be obtained by telephone and documented accordingly*

_____
Signature/Telephone Number

_____
Witness

Annex C to AR 311 (Page 2 of 2)

## ACTIONS REQUIRED FOR INMATES WITH CONTAGIOUS DISEASES

Wardens working in conjunction with the medical staff will ensure that every inmate in his/her institution who has a contagious disease is properly identified and immediately isolated to prevent other inmates and employees from contracting the disease, (AIDS, hepatitis, etc.)

Director of Medical Services will coordinate with Wardens to ensure that all medical staff and institutional employees are adequately instructed in the proper methods of handling subjects with a contagious disease. The medical staff at each institution will make recommendations too, and will assist the Warden as to the safest manner to handle deceased inmates that were infected with a contagious disease (protective clothing, disposal of clothing, trash, etc.).

All employees will exercise every precaution to avoid any type body fluids, (blood, urine, saliva, etc.) when coming in contact with inmates infected with contagious diseases. The Warden will ensure that only the minimum number of employees necessary come in contact with the body.

In case of injury or death of inmates infected with a contagious disease, institutional personnel will use protective gloves, etc., in handling inmates, evidence, etc.

Wardens/Officer-in-Charge shall immediately inform investigators and others coming onto the death/crime scene that inmate is infected with a contagious disease.

Investigators will exercise every precaution to avoid contact with any body fluids from inmates infected with a contagious disease. The handling of evidence will be done with the utmost care so as not to come in contact with any body fluids from injured or deceased subject. All evidence shall be properly secured and have distinguishing labeling that victim/suspect is contagious. Investigator will notify Forensic Sciences personnel before contact is made with evidence associated with a subject who has contagious disease or a body that has a contagious disease.

An autopsy will not be mandatory on an inmate's body that was infected with a contagious disease at time of death. However, this decision will be made between I & I investigators, Forensic Sciences' personnel and the coroner as to the feasibility of an autopsy.

Should the situation arise where the body of an inmate infected with a contagious disease must remain at the institution for an extended period of time, the Warden and medical staff will determine the most appropriate method of storage to avoid infecting other inmates/employees.

The Warden will insure that the area where the deceased inmate was housed is thoroughly fumigated with chemical solutions recommended by medical staff.

Annex D to AR 311

**VA** Veterans Administration

# APPLICATION FOR BURIAL BENEFITS

(Under 38 U.S.C., Chapter 23)

IMPORTANT - Read instructions carefully before completing form. YOUR COMPLETE COMPLIANCE WITH ALL INSTRUCTIONS WILL AVOID DELAY.

1. FIRST NAME - MIDDLE NAME - LAST NAME OF DECEASED VETERAN (Type or print)

| 2A. SOCIAL SECURITY NO. OF VETERAN | 2B. VA FILE NO. C- |
|---|---|

3A. FIRST NAME - MIDDLE NAME - LAST NAME OF CLAIMANT (Type or print)

| 3B. MAILING ADDRESS OF CLAIMANT (Number and street or rural route, city or P.O., State and ZIP Code) | 4. RELATIONSHIP TO VETERAN |
|---|---|

## PART I - INFORMATION REGARDING VETERAN

| 5. DATE OF BIRTH | 6. PLACE OF BIRTH | 7. DATE OF DEATH | 8A. PLACE OF DEATH | 8B. DATE OF BURIAL |
|---|---|---|---|---|

9. MARITAL STATUS  ☐ NEVER MARRIED  ☐ MARRIED  ☐ WIDOWED  ☐ DIVORCED

10. SURVIVING CHILDREN? ☐ YES ☐ NO

| 11. FIRST NAME, MIDDLE NAME, LAST NAME OF SPOUSE (Complete address, if living) | 12. FIRST NAME, MIDDLE NAME, LAST NAME OF FATHER (Complete address, if living) | 13. FIRST NAME, MIDDLE NAME, LAST NAME OF MOTHER (Complete address, if living) |
|---|---|---|

### SERVICE INFORMATION (The following information should be furnished for the periods of the VETERAN'S ACTIVE SERVICE)

| 14A. ENTERED SERVICE | | 14B. SERVICE NO. | 14C. SEPARATED FROM SERVICE | | 14D. GRADE, RANK OR RATING ORGANIZATION AND BRANCH OF SERVICE |
|---|---|---|---|---|---|
| DATE | PLACE | | DATE | PLACE | |
| | | | | | |
| | | | | | |
| | | | | | |

15. IF VETERAN SERVED UNDER A NAME OTHER THAN THAT SHOWN IN ITEM 1, GIVE FULL NAME AND SERVICE RENDERED UNDER THAT NAME

## PART II - CLAIM FOR BURIAL BENEFITS AND/OR INTERMENT ALLOWANCE IF PAID BY CLAIMANT

*NOTE - If claiming Plot Allowance Only, do not complete Part II, but complete Parts III and IV on reverse.*

16. PLACE OF BURIAL

17. WAS BURIAL (WITHOUT CHARGE FOR PLOT OR INTERMENT) IN A STATE OWNED CEMETERY, OR SECTION THEREOF, USED SOLELY FOR PERSONS ELIGIBLE FOR BURIAL IN A NATIONAL CEMETERY?
☐ YES  ☐ NO (If "No," complete items 19 and 20)

18. WAS BURIAL IN A NATIONAL CEMETERY OR CEMETERY OWNED BY THE FEDERAL GOVERNMENT?
☐ YES  ☐ NO (If "Yes," complete items 19 and 20)

19. BURIAL PLOT, MAUSOLEUM, ETC. COST IS: (Check one)
☐ PAID BY ANOTHER PERSON(S)  ☐ PAID BY CLAIMANT FOR BURIAL
☐ DUE FUNERAL DIRECTOR  ☐ NONE
☐ DUE CEMETERY OWNER

20. IF PLOT/INTERMENT EXPENSES ARE UNPAID, WHO WILL FILE CLAIM FOR EXPENSES? (Name and Address)

| 21. TOTAL EXPENSE OF BURIAL, FUNERAL, TRANSPORTATION AND IF CLAIMED, BURIAL PLOT $ | 22. AMOUNT PAID $ |
|---|---|

| 23. WHOSE FUNDS WERE USED? | 24A. HAS PERSON WHOSE FUNDS WERE USED BEEN REIMBURSED? ☐ YES ☐ NO (If "Yes," complete items 24B and 24C) | 24B. AMOUNT OF REIMBURSEMENT $ | 24C. SOURCE OF REIMBURSEMENT |
|---|---|---|---|

| 25A. HAS OR WILL ANY AMOUNT BE ALLOWED ON EXPENSES BY LOCAL, STATE OR FEDERAL AGENCY? ☐ YES ☐ NO (If "Yes," complete items 25B and 25C) | 25B. AMOUNT $ | 25C. SOURCE | 26. WAS THE VETERAN A MEMBER OF A BURIAL ASSOCIATION OR COVERED BY BURIAL INSURANCE? ☐ YES ☐ NO (Before answering read and comply with instruction 11) |
|---|---|---|---|

VA FORM AUG 1982 **21-530**

EXISTING STOCK OF VA FORM 21-530, FEB 1982, WILL BE USED.

Annex E to AR 311(Pg.1 of 4 pgs.)

**IMPORTANT** - Complete only if burial was NOT in a national cemetery or cemetery owned by the Federal Government.

| 27A. WAS BURIAL (WITHOUT CHARGE FOR PLOT OR INTERMENT) IN A STATE OWNED CEMETERY, OR SECTION THEREOF, USED SOLELY FOR PERSONS ELIGIBLE FOR BURIAL IN A NATIONAL CEMETERY? | 27B. PLACE OF BURIAL |
|---|---|
| ☐ YES  ☐ NO *(If "Yes," complete Items 27A and 27B ONLY, then complete Part IV)* | |

| 28. COST OF BURIAL PLOT *(Individual Grave Site)* | 29A. DATE OF PURCHASE | 29B. DATE OF PAYMENT | 30A. HAVE BILLS BEEN PAID IN FULL? | 30B. AMOUNT UNPAID |
|---|---|---|---|---|
| $ | | | ☐ YES  ☐ NO *(If "No," complete Item 30B)* | $ |

| 31. WHOSE FUNDS WERE USED? | 32A. HAS PERSON WHOSE FUNDS WERE USED BEEN REIMBURSED? | 32B. AMOUNT OF REIMBURSEMENT |
|---|---|---|
| | ☐ YES  ☐ NO *(If "Yes," complete Items 32B and 32C)* | $ |

| 32C. SOURCE OF REIMBURSEMENT | 33A. HAS OR WILL ANY AMOUNT BE ALLOWED ON EXPENSES BY STATE OR FEDERAL AGENCY? | 33B. AMOUNT | 33C. SOURCE |
|---|---|---|---|
| | ☐ YES  ☐ NO *(If "Yes," complete Items 33B and 33C)* | $ | |

## PART IV - CERTIFICATION AND SIGNATURE

I CERTIFY THAT the foregoing statements made in connection with this application on account of the named veteran are true and correct to the best of my knowledge and belief.

| 34A. SIGNATURE OF CLAIMANT *(If signed by mark, complete Items 40A thru 41B)* *(If signing for firm, corporation, or state agency, complete Items 34B and 35)* | 34B. OFFICIAL POSITION OF PERSON SIGNING ON BEHALF OF FIRM, CORPORATION, OR STATE AGENCY |
|---|---|
| | |

| 35. FULL NAME AND ADDRESS OF THE FIRM, CORPORATION, OR STATE AGENCY FILING AS CLAIMANT |
|---|
| |

*NOTE - Where the claimant is a firm or other unpaid creditor, Items 36A thru 39 MUST be completed by the individual who authorized services.*

I CERTIFY THAT the foregoing statements made by the claimant are correct to the best of my knowledge and belief.

| 36A. SIGNATURE OF PERSON WHO AUTHORIZED SERVICES *(If signed by mark, complete Items 40A thru 41B)* | 36B. NAME OF PERSON AUTHORIZING SERVICES *(Type or Print)* |
|---|---|
| | |

| 37. ADDRESS *(Number and street or rural route, city or P.O., State and ZIP Code)* |
|---|
| |

| 38. DATE | 39. RELATIONSHIP TO VETERAN |
|---|---|
| | |

### WITNESSES TO SIGNATURE IF MADE BY "X" MARK

*NOTE:    Signature made by mark must be witnessed by two persons to whom the person making the statement is personally known, and the signatures and addresses of such witnesses must be shown below.*

| 40A. SIGNATURE OF WITNESS | 40B. ADDRESS OF WITNESS |
|---|---|
| | |

| 41A. SIGNATURE OF WITNESS | 41B. ADDRESS OF WITNESS |
|---|---|
| | |

**PENALTY** - The law provides severe penalties which include fine or imprisonment, or both, for the willful submission of any statement or evidence of a material fact, knowing it to be false.

### VETERANS ADMINISTRATION HEADSTONES AND MARKERS

The Veterans Administration will furnish, upon request, a Government headstone or marker at the expense of the United States for the unmarked graves of certain individuals eligible for burial in a national cemetery, but not buried there. These individuals include any veteran with an other than dishonorable discharge who dies after service or any serviceman or servicewoman who dies on active duty. Certain other individuals may also be eligible for the headstone or marker. Headstones or markers for all individuals buried in a national or post cemetery are furnished automatically without request from the family.

In lieu of furnishing a headstone or marker for a veteran not buried in a national cemetery, the Veterans Administration may make a limited reimbursement for the cost of a privately purchased headstone or marker. The amount of reimbursement will not exceed the actual average cost of a Government headstone or marker.

For additional information and an application, contact the nearest Veterans Administration Office. Please state whether you wish to apply for a Government headstone or marker or whether you wish to apply for limited reimbursement for costs incurred in acquiring a non-Government headstone or marker.

## IMPORTANT - READ THESE INSTRUCTIONS CAREFULLY

1. PROTECTION OF PRIVACY. No allowance of burial benefits may be granted unless this form is completed and returned as required by existing law (38 U.S.C., Chapter 23). The information requested by this form is considered relevant and necessary to determine maximum benefits provided under the law. Responses may be disclosed outside the VA only if the disclosure is authorized under the Privacy Act, including the routine uses identified in the VA system of records, 58 VA21/22/28, Compensation, Pension, Education and Rehabilitation Records - VA, published in the Federal Register.

2. BENEFITS PAYABLE

   a. BASIC BURIAL ALLOWANCE - An amount not exceeding $300 for expenses of burial and funeral of the deceased veteran. The term burial, as used in this form, includes all the recognized methods of interment including cremation, burial at sea, etc.

   b. ELIGIBILITY FOR BASIC BURIAL ALLOWANCE - The deceased veteran must have been discharged or released from service under conditions other than dishonorable and must have either:
   (1) Been in receipt of pension or compensation (or would have been in receipt of compensation, but for the receipt of military retirement pay; or
   (2) Had an original or reopened claim for pension or compensation pending and is found entitled from a date prior to date of death; or
   (3) Died while traveling under prior authorization or while properly institutionalized by the VA.

   c. PLOT or INTERMENT ALLOWANCE - The term interment, as used in this form, is synonymous with burial and is defined the same. The term plot means the final disposal site of the remains and includes a grave, mausoleum vault, columbarium niche, or similar place. The plot or interment benefit is payable as:
   (1) An additional allowance not exceeding $150 for incurred expenses of interment or plot AND the interment or burial was not made in a national cemetery or other cemetery under the jurisdiction of the United States.
   (2) An amount of $150, paid to a State or State agency or political subdivision, if a veteran died from nonservice-connected causes, and is buried (without charge for the cost of a plot or interment) in a State owned cemetery, or section thereof, used solely for persons eligible for burial in a national cemetery.

   d. ELIGIBILITY FOR PLOT or INTERMENT ALLOWANCE - In addition to persons for whom the basic burial allowance is payable, eligibility for only the plot or interment allowance exists when the veteran:
   (1) Was discharged or released from service under conditions other than dishonorable and must have either;
   (2) Served during a period of war; or
   (3) Been discharged from active duty for (or could have been discharged for) a disability incurred in or aggravated in the line of duty.

   e. BURIAL ALLOWANCE FOR SERVICE-CONNECTED DEATH - When the veteran's death occurs, as the result of a service-connected disability, an amount not exceeding $1,100 may be paid in lieu of the $300 basic burial allowance and the $150 interment and plot allowance.

   f. TRANSPORTATION COSTS - The cost of transporting the body to the place of burial may also be paid in addition to the above allowances when:
   (1) The veteran died of a service-connected disability or had a compensable service-connected disability and burial is in a national cemetery, or
   (2) The veteran died while in a hospital or domiciliary to which he/she had been properly admitted under authority of the VA, or while in a VA nursing home, or,
   (3) The veteran died enroute while traveling under prior authorization of the VA for the purpose of examination, treatment or care.

3. WHO SHOULD FILE CLAIM.

   a. CREDITOR - If expenses of the veteran's burial and funeral have not been paid, claim should be filed by the funeral director or crematory service by completion of Parts I, II, and IV. If the funeral director or crematory service has paid or advanced funds for or furnished the plot or interment expenses, the completion of Part II and inclusion of these items of expense on the statement of account will serve as claim for the $150 interment allowance. If the cemetery owner or other creditor has not been paid for the plot and the related interment expenses, he/she may file claim by completing Parts I, III, and IV. If both the funeral director and cemetery owner are unpaid, each must submit a separate VA Form 21-530 signed by the person who authorized services.

   b. PERSON WHOSE FUNDS WERE USED - If all creditors have been paid, claim should be filed by the person or persons whose personal funds were used to pay such expenses by completion of Parts, I, II, and IV.

   c. VETERAN'S ESTATE - If the expenses were paid from funds of the veteran's estate, claim should be filed by the executor or administrator thereof by completing Parts I, II, and IV, and submitting a copy of the letters of administration or letters testamentary certified over the signature and seal of the appointing court.

VA FORM
AUG 1982  **21-530**

EXISTING STOCKS OF VA FORM 21-530,
FEB 1982, WILL BE USED.

d. **STATE OR STATE AGENCY** - If a veteran whose death occurred from nonservice-connected causes was buried without charge for any of the items or services described in item 29 of a State-owned cemetery, or section thereof, used for persons eligible in a national cemetery, claim may be filed by a State official by completion of Parts I, III (Items 27A and 27B), and IV.

4. **HEARING** - You have the right to a personal hearing at any stage of claims processing, either before or after a decision is made. This right may be exercised with regard to an original claim, supplemental claim or with regard to any subsequent action affecting your entitlement. All you need do is inform the nearest VA office as to your desires, and we will arrange a time and place for the hearing. You may bring witnesses if you desire and their testimony will be entered in the record. The VA will furnish the hearing room, provide hearing officials, and prepare the transcript of the proceedings. The VA cannot pay any of your expenses in connection with the hearing.

5. **TIME LIMIT FOR FILING CLAIM.** Claim must be filed with the Veterans Administration within 2 years from the date of the veteran's burial or cremation. In any case where a veteran's discharge was corrected, after death, to one under conditions other than dishonorable, claim must be filed within 2 years from date of correction.

6. **SOCIAL SECURITY NUMBER.** The number entered in Item 2A, Social Security Number, should be the deceased veteran's own social security number.

7. **CAREFUL EXECUTION OF CLAIM NECESSARY.** This application must be signed (Item 34A) by the claimant. All of the information required in this application should be answered fully and clearly. Answers must be written in a clear legible hand or typewritten. If you do not know the answer to any question, say so. If any of the questions are not clear and you desire further information before attempting to answer the question involved, you should write to the Veterans Administration for instructions.

8. **COMPLETING OF CLAIM BY A FIRM, CORPORATION, OR STATE AGENCY.** The claim must be executed in the full name of the firm, corporation, or State agency, and show the official position or connection with the firm, corporation, or State agency, of the individual who signs the claim in its behalf, e.g.:

> STONE FUNERAL HOME
> By: John Doe, President.

9. **PROOF OF VETERAN'S DEATH TO ACCOMPANY CLAIM.** The death of a veteran in a Government institution does not need to be proven by a claimant. Otherwise, the claimant must forward a copy of the public record of death or a copy of a coroner's report of death or of the verdict of a coroner's jury, certified by the custodian of such records. If proof of death has previously been furnished the Veterans Administration, it need not be submitted with this application.

10. **STATEMENT OF ACCOUNT TO ACCOMPANY CLAIM.**

   a. **FUNERAL DIRECTOR** - This claim must be accompanied by a statement of account (preferably on the printed billhead of the funeral director) showing the name of the veteran for whom the services were performed; the nature and cost of services rendered, including any payments made to another funeral home (showing name and address) for initial services and merchandise; all credits; and the name of person or persons by whom payment in whole or in part was made.

   b. **TRANSPORTATION** - If the body was transported by common carrier, a receipt from the railroad express company or airline should accompany the claim. All receipts covering transportation charges should show the name of the veteran whose body was transported, the name of the person who paid the charges, and the amount of the charges. The statement of account should be itemized to show the charge or charges made for all transportation expenses. Failure to itemize transportation charges may result in delay of payment or payment of a lesser amount than may otherwise be awarded.

   c. **ACCOUNT PAID IN FULL** - WHERE TOTAL PAYMENT HAS BEEN MADE FOR THE SERVICES PERFORMED, THE STATEMENT OF ACCOUNT SHOULD BE RECEIPTED IN THE NAME OF THE FIRM OR INDIVIDUAL PERFORMING THE SERVICES. Bills or receipts filed in support of this claim become a part of the permanent record and may not be returned.

   d. **PLOT/INTERMENT ALLOWANCE ONLY** - If claim is for the plot interment allowance only, the statement of account on the printed billhead of the cemetery or other creditor must show the cost of the veteran's individual gravesite or the total cost of the plot and the number of gravesites in the plot.

11. **BURIAL ASSOCIATION OR BURIAL INSURANCE BENEFITS.** If the deceased veteran was a member of a burial association or if any insurance company is obligated to pay all or part of the burial expenses, Item 26 should be answered "Yes". It will then be necessary to support the claim with a statement from the association or insurance company setting forth the terms of the contract and how and with whom settlement was made.

12. **SERVICE RECORD.** If the veteran never filed a claim with the Veterans Administration, a photocopy of his/her discharge certificate furnished with this claim will permit prompt processing.

13. **IMPORTANT:** Payment of burial benefits is prohibited if the funeral home or cemetery used is found to discriminate based upon race, color, or national origin (42 U.S.C. 2000(d)). The individual who authorizes services has the right to file a complaint with the nearest VA Regional Office if such discriminatory practices are encountered.

NOTE: The payment of any fee in the preparation of this claim is prohibited.

STATE OF ALABAMA

**DEPARTMENT OF CORRECTIONS**

FOB JAMES, JR.
GOVERNOR

Research, Monitoring, & Evaluation
Post Office Box 301501
Montgomery, Alabama 36130-1501

JOE S. HOPPER
COMMISSIONER

TO:  WARDENS                              CHANGE #1
     HEADS OF STAFF AGENCIES             ADMINISTRATIVE REGULATION #311
     DIVISION HEADS                       September 5, 1996

          HOMICIDE, SUICIDE, EXECUTION, ACCIDENTAL, AND
        NATURAL DEATH REPORTING; INVESTIGATIONS, AUTOPSIES
              AND DISPOSITION OF DEAD BODIES

1.   Purpose/explanation of change:  To eliminate necessity for next-of-kin
     to sign a form concerning responsibilities to claim or not to claim the
     body of the deceased inmate.  Many times the closest relative does not
     come to the institution when an inmate dies.  Therefore, this change
     allows the Warden to expedite matters and <u>document</u> information based on
     telephone conversation with next-of-kin.

2.   Change to be made:

     <u>Reference</u>                              <u>Action Required</u>

     Annex C                              On lower section of form add
                                          following:

                                          "**Information required to
                                          complete this annex may be
                                          obtained by telephone and
                                          documented accordingly.**"

3.   File this numbered change at the back of the  regulation after
     annotating both the index and the regulation,  indicating changes  have
     been accomplished.  Advise all personnel concerned accordingly.

_____
Joe S. Hopper, Commissioner



STATE OF ALABAMA

## DEPARTMENT OF CORRECTIONS

Research, Monitoring, & Evaluation
Post Office Box 301501
Montgomery, Alabama 36130-1501

FOB JAMES, JR.
GOVERNOR

JOE S. HOPPER
COMMISSIONER

TO:    WARDENS                         CHANGE #2
        HEADS OF STAFF AGENCIES      ADMINISTRATIVE REGULATION #311
        DIVISION HEADS               FEBRUARY 4, 1997

HOMICIDE, SUICIDE, EXECUTION, ACCIDENTAL AND
NATURAL DEATH REPORTING; INVESTIGATIONS,
AUTOPSIES AND DISPOSITION OF DEAD BODIES

1.    Purpose/explanation of change:    The cited annex is no longer required.

2.    Changes to be made:

      <u>Reference</u>                         <u>Action Required</u>
      Section II/I, Annex B          Delete Annex "B".    Remove from
                                                regulation.

3.    File this numbered change at the back of the regulation after annotating both the index and the regulation, indicating changes have been accomplished.  Advise all personnel concerned accordingly.

Joe S. Hopper, Commissioner



STATE OF ALABAMA

DEPARTMENT OF CORRECTIONS

**Bob Riley**
**Governor**

101 South Union Street
Montgomery, AL 36117

334-353-3870
Fax: 353-3967

**Donal Campbell**
**Commissioner**

# M E M O R A N D U M

**TO:**       All Wardens

**FROM:**     *Donal Campbell*
            Donal Campbell
            Commissioner

**SUBJECT:**  Transporting of Deceased Inmates

**DATE:**     April 24, 2003

---

The Department of Corrections is negotiating with several private companies for body pick-up and transportation to Department of Forensic Sciences (DFS) Laboratories (see attachment). This is being done to eliminate the practice of Correctional Officers transporting inmate remains.

Currently, DFS is attempting to pick-up and transport all inmate deaths. If this is not done, alternative transportation will be handled through private businesses.

In all deaths, the Investigation Division will be contacted and they will arrange pick-up and transportation through DFS or an alternative service. In the event a private firm is utilized, the institution or center will be responsible for the cost of the transportation and will be paid from the Inmate Contingency Fund (ICF).

Institutions and centers need to stock body bags available from Institutional Services as well as pull type seals that are consecutively numbered in order to lock the body bag prior to the remains being removed from the institution. The number on the seal will be listed on the chain of custody form showing that the bag was sealed prior to transport. The individual receiving the remains will sign the evidence form indicating receipt of the body.

Transporting of Deceased Inmates
April 24, 2003
Page 2

In the event the inmate's next of kin does not claim the body for burial, the Wardens will arrange through I & I to have the body taken to the nearest Funeral Home for preparation and arrange for burial in the nearest Institutional Cemetery. The bodily preparation cost (i.e., transportation, embalming and casket) will be the responsibility of the original institution and will also be paid from the ICF.

All inmate deaths will be handled in accordance with Administrative Regulation 311 with the above exceptions.

DC:kh

Attachment



*No Ron*

*Road*

### STATE OF ALABAMA

# DEPARTMENT OF CORRECTIONS

#### THOMAS F. STATON CORRECTIONAL FACILITY

Route 1, Box 56
Elmore, Alabama 36025

Telephone: 567-2221
Area Code 205

September 22, 1986

M E M O R A N D U M

FROM:    George Bowen, Warden
         Staton Correctional Facility

TO:      Mr. Freddie V. Smith, Commissioner
         Attention: Director of Land Management

SUB:     Proposal for a Prison Cemetery at the
         Staton/Draper Complex.

Reference: A. Administrative Regulation 017, "Land Management," dated January 16, 1985. (attached)

Reference: b. Staton memorandum, "Request for legal advice: (Pauper's Cemetery)", dated July 31, 1986. attached)

Reference B outlines a situation at Staton whereby the Department of Corrections uses an Elmore County Pauper's Cemetery for burials of unclaimed inmates' bodies. In the past this has not been a problem as we have only used it about once a year. In 1986; however, inmate burials there have rapidly increased, bringing about an immediate need for a DOC cemetery.

Reference A required that all use of DOC owned land be coordinated and approved by the Department Land Manager.

Forwarded herewith is a proposal for a DOC Prison Cemetery exclusively for the burial of unclaimed DOC inmates' bodies.

This cemetery will be southeast of Staton, about midway between Staton and the Elmore Correctional Facility adjacent to the existing Elmore County Pauper's Cemetery. It will be about 290 feet by about 185 feet and will be divided into about 1500 cemetery lots. Only a slight change in an existing drainage ditch will be needed. This cemetery can be put into use immediately upon receipt of approval. The change in the drainage ditch does not have to be immediate.

Request your favorable consideration and approval of this proposal.

GB/CJM/bhh

Enclosures - 4
         Memorandum - Reference B
         Administrative Regulation 017
         Sketch of existing property
         Sketch of property with proposed
              change in drainage ditch

cc: File



STATE OF ALABAMA

# DEPARTMENT OF CORRECTIONS

### THOMAS F. STATON CORRECTIONAL FACILITY

Route 1, Box 56
Elmore, Alabama 36025

Telephone: 567-2221
Area Code 205

July 31, 1986

M E M O R A N D U M

FROM:    Raymond Russell, Assistant Warden
Staton Correctional Facility

TO:      Mr. Harry Lyles, General Counsel

SUB:     Request for Legal Advice:
(Pauper's Cemetery)

Located between the Staton main compound and the Annex compound is a cemetery. Although on State property, it is technically the Elmore County Paupers Cemetery. Elmore County makes occasional use of it. Also, in the past, the Department of Corrections has buried the unclaimed body of an inmate in the cemetery about once a year. This; however, seems to have changed as in the past thirty days we have had three inmate funerals there.

The problem is that there seems to be no records being kept as to who is being buried there. At least, if there is a record being kept, I do not know who is keeping it and have not been able to contribute information to it.

Thus far, I have contacted the Public Health Service and the Probate Court to obtain further information on reporting these burials. The Public Health Service reported they keep records of people buried within the county, but this apparently is not by Cemetary. In this last case, the van driver had a body transfer slip which was signed by Chaplain Curtis Browder at Staton. The van driver stated he would turn this slip in at the Central Warehouse. The Public Health Service stated they receive these slips.

1 of 2

My questions are:

1. What is our responsibility as far as recording who is buried in this cemetery.

2. To whom if anyone do we report upon burying an inmate in this cemetery?

RR/CJM/bhh

cc: Legal Precendence File