IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

_____

MARVIN JAMES                        *

    Plaintiff,                    *

        v.                        *       2:05-CV-451-MHT
                                                                (WO)

DONAL CAMPBELL,                     *
COMMISSIONER, *et al.*,
                                    *
    Defendants.

_____

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

Plaintiff, Marvin James ["James"], filed this 42 U.S.C. § 1983 action on May 17, 2005 seeking damages and injunctive relief.[1] He claims in his complaint, as amended, that Defendants subjected him to unconstitutional conditions of confinement at the Staton Correctional Facility ["Staton"] and denied him adequate medical care and treatment. James asserts that Defendants' conduct violated the Eighth Amendment as well as the Americans with Disabilities Act. Named as Defendants are former Commissioner Donal Campbell,[2] Warden Leon Forniss, and Attorney General Troy King. (Doc. Nos. 1, 2, 14.)

Defendants filed a special report, a supplemental special report, and supporting

---

[1] During the pendency of this action James was released from the custody of the Alabama Department of Corrections.

[2] Since the filing of this complaint, Donal Campbell has been succeeded in office by Commissioner Richard Allen.

evidentiary materials addressing James' claims for relief. In accordance with the instructions contained in the court's order entered on August 3, 2005 and October 25, 2005 (Doc. Nos. 17, 25), the court deems it appropriate to treat this report, as supplemented, as a motion for summary judgment. Thus, this case is now pending on Defendants' motion for summary judgment. Upon consideration of the motion, the evidentiary materials filed in support thereof, and James' opposition to the motion, the court concludes that Defendants' motion for summary judgment is due to be granted.

## I. STANDARD OF REVIEW

To survive the properly supported motion for summary judgment filed by Defendants, James is required to produce some evidence which would be admissible at trial supporting his constitutional claims. Rule 56(e), *Federal Rules of Civil Procedure*. Specifically, he must "go beyond the pleadings and ... designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). To meet this standard, "[a] mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party. *Anderson v. Liberty Lobby,* 477 U.S. 242, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986)." *Walker v. Darby*, 911 F.2d 1573, 1576 -1577 (11th Cir. 1990). A plaintiff's conclusory allegations do not provide sufficient evidence to oppose a motion for summary judgment. *James v. Ostrout*, 65 F.3d 912 (11th Cir. 1995); *Fullman v. Graddick*, 739 F.2d 553, 556-557 (11th Cir. 1984). Thus, when a plaintiff fails to make a showing adequate to establish the existence of an element essential to his case, and on which the plaintiff will bear the burden

of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex*, 477 U.S. at 322; *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607 (11th Cir. 1987).

Where all the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates that there is no genuine issue of material fact and that the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper. *Celotex Corp.*, 477 U.S. at 322; *Everett v. Napper*, 833 F.2d 1507, 1510 (11th Cir. 1987); *Wright v. Southland Corp.,* 187 F.3d 1287 (11th Cir. 1999); *Pritchard v. Southern Co. Servs.,* 92 F.3d 1130, 1135 (11th Cir. 1996); *McMillian v. Johnson,* 88 F.3d 1573, 1584-1585 (11th Cir. 1996). Summary judgment is therefore appropriate when the pleadings, admissible evidentiary materials and affidavits "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c) *Federal Rules of Civil Procedure*; *Eberhardt v. Waters*, 901 F.2d 1578, 1580 (11th Cir.1990).

Although factual inferences must be viewed in a light most favorable to the non-moving party, and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing a genuine issue of material fact. *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). In this case, James has failed to demonstrate that there is a genuine issue of material fact in order to preclude summary judgment.

## II. DISCUSSION

*A. Injunctive Relief*

James is no longer incarcerated at Staton. The transfer or release of a prisoner renders moot any claims for injunctive or declaratory relief. *See County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979); *see also Cotterall v. Paul*, 755 F.2d 777, 780 (11th Cir. 1985) (past exposure to even illegal conduct does not in and of itself show a pending case or controversy regarding injunctive relief if unaccompanied by any continuing present injury or real and immediate threat of repeated injury). As it is clear from the pleadings and records before the court that James is no longer housed at Staton, his requests for declaratory and/or injunctive relief have been rendered moot.

*B. Conditions of Confinement*

Defendants deny that James was subjected to unconstitutional conditions of confinement at Staton. The Constitution proscribes those conditions of confinement which involve the wanton and unnecessary infliction of pain. *Rhodes v. Chapman*, 452 U.S. 337 (1981). Only actions which deny inmates "the minimal civilized measure of life's necessities" are grave enough to establish constitutional violations. *Id.* at 347; *see also Wilson v. Seiter*, 501 U.S. 294 (1991) (overcrowding, without more, does not rise to the level of a constitutional violation). The Constitution "does not mandate comfortable prisons, but neither does it permit inhumane ones." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Rhodes*, 452 U.S. at 349). Thus, it is well-settled that the treatment a prisoner receives and the conditions under which he is confined are subject to constitutional scrutiny. *Helling v. McKinney*, 509 U.S. 25 (1993).

A prison official has a duty under the Eight Amendment to "provide humane

conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer,* 511 U.S. at 832 (quoting *Hudson v. Palmer,* 468 U.S. 517, 526-27 (1984)); *Helling,* 509 U.S. at 33. In order to demonstrate an Eighth Amendment violation with respect to conditions of confinement, a prisoner must satisfy both an objective and a subjective inquiry. *Farmer*, 511 U.S. at 834. The objective component requires an inmate to prove the he was denied the "minimal civilized measure of life's necessities." *Id*. The challenged prison condition must be "extreme" and must pose "an unreasonable risk of serious damage to his future health." *Chandler v. Crosby*, 379 F.3d 1278, 1289-90 (11th Cir. 2004). The subjective component requires a prisoner to prove that the prison official acted with "deliberate indifference" in disregarding that risk by showing that an official knew the inmate faced a "substantial risk of serious harm" and with such knowledge, disregarded that risk by failing to take reasonable measures to abate it. *Farmer*, 511 U.S. at 828, 834, 837.

With regard to the conditions under which he was housed, James alleges that: (1) Staton is overcrowded; (2) the roof of the dorm in which he was housed (G Dorm) leaks when it rains; (3) there sometimes is standing room only in the chow hall; (4) G Dorm has insufficient restroom facilities and does not contain any bars or railings for handicapped inmates; (5) the water is contaminated; (6) the lighting and ventilation is inadequate; and (7) deceased inmates do not receive a proper burial. James fails to establish, however, that these conditions caused him serious harm. Additionally, James fails to produce evidence which shows that Defendants knew of an obvious risk of serious harm to him and disregarded that

5

risk, *Farmer* 511 U.S. at 837, or that Defendants' actions resulted in the denial of the minimal civilized measure of life's necessities. *Rhodes*, 452 U.S. at 347. (*See* Doc. No. 15, Exhs. 1, 2.)

James also alleges as an unconstitutional condition of his confinement that he had to walk what he contends were long distances to reach the chow hall and the infirmary despite having hip and back problems.[3] Shortly after he filed this complaint in May 2005, James states that his ability to retain his KOP ("keep on person") medication was discontinued, which required him to make additional trips to the infirmary because some of his medication had to be taken three times a day. James contends that the increased amount of walking he had to do after his KOP medication was discontinued resulted in increased lower back and spinal pain.[4] (Doc. Nos. 2, 14.)

Defendants' evidence reflects that while at Staton James was prescribed Dilantin, a seizure medication. Inmates on seizure medication may not keep it on their person because the dosage consumed must be monitored. James was allowed his remaining KOP medications, including Atenolol, Niacin, Nitroglycerine, Aspirin, and Lopid. Defendants' evidence further reflects that James did not report regularly to the infirmary to pick up his

---

[3] According to James, while at Staton he was classified as a chronic care inmate and received care and treatment for heart problems, seizures, and back and hip problems for which he was prescribed a cane. (Doc. No. 2.)

[4] James' no prolonged walking and standing profile directed that he not be made to stand or walk for more than fifteen minutes at a given time. (Doc. No. 21, Exh. 1.) While James claims that he had to walk various distances, which he describes in terms of "blocks," he does not allege that the distances he had to walk within the confines of the institution exceeded the limitation contained in his no prolonged walking or standing profile.

Dilantin and that, as of September 2, 2005, the last time he picked up his KOP medications was May 18, 2005. (Doc. No. 21, Exh. 1.)

On June 8, 2005, James submitted a sick call slip complaining of pain to his head from prolonged standing or walking and requested a front of the line profile. Prior to his release from custody in September 2005, James was moved to C Dorm, a dormitory which Defendants assert is closer than G Dorm to the pill call window and the chow hall. (Doc. No. 21, Exh. 1.)

With regard to this alleged unconstitutional condition of confinement, James fails to establish that he suffered a sufficiently serious constitutional deprivation, which must be "extreme" to be actionable. *See Chandler*, 379 F.3d at 1289-90. As mentioned, under the Eight Amendment prison officials have a duty to "provide humane conditions of confinement," but the Constitution doe not mandate that prisoners be comfortable. *Farmer,* 511 U.S. at 832. Conditions of confinement that do not fall below contemporary standards of decency are constitutional. *See Thomas v. Ramos,* 130 F.3d 754, 763 (7th Cir. 1997).

Here, James presents no evidence in support of his argument that the amount of walking he had to do to reach the chow hall or to pick up medicine exposed him to an unreasonable risk of harm that may be considered extreme, or that the conditions at Staton were punitive. Though unpleasant, the hardships about which James complains regarding the conditions under which he was housed were not of sufficient severity to implicate the Eighth Amendment. In light of the foregoing, Defendants' motion for summary judgment on James' claims challenging the conditions of confinement at Staton is due to be granted.

*C. Medical Care*

James complains that he was not provided with adequate medical care while incarcerated at Staton. In support of this claim, James asserts that there exists only one certified doctor for four different institutions housing more than 5,000 inmates. The court also understands James to complain that Defendants failed to provide him with adequate medical care and treatment by discontinuing his KOP medication and by requiring him to walk long distances to the chow hall and the infirmary despite a no prolonged walking and standing profile.

Defendants state that medical staffing is arranged by the prison health care provider which provides one doctor, one physician's assistant, and a nurse practitioner for Staton. These individuals share in the responsibility of providing medical care to the inmate population at Staton. Inmates considered disabled or handicapped are housed at the State's facility for the aged and infirm in Hamilton, Alabama. No inmate considered disabled or handicapped is housed at Staton. (Doc. No. 15, Exh. 1.)

Defendants affirm that during James' incarceration at Staton, he received care and treatment for hypertension, high cholesterol, arthritis, and seizures. His back and hip were medically reported as stable. Additionally, Defendants maintain that James was allowed to keep his KOP medication with the exception of his seizure medication, Dilantin, as the dosage consumed had to be monitored. Defendants' evidence does not indicate that James was considered a disabled or handicapped inmate during his tenure at Staton. (Doc. No. 15, Exh. 1; Doc. No. 21, Exh. 1.)

Initially, the court notes that Defendants' evidence affirmatively reflects that Defendants were not involved in the provision of medical staffing and medical care about which James complains. The language of 42 U.S.C. § 1983 requires proof of an affirmative causal connection between the actions taken by a defendant and the alleged constitutional deprivation. *Jones v. Preuit & Mauldin*, 851 F.2d 1321 (11th Cir. 1988). James has come forward with no evidence demonstrating existence of the requisite causal connection with respect to his claims of inadequate medical care against the named defendants.

To the extent James maintains that Defendants are liable for the actions of medical personnel as a result of their supervisory roles, James' claims must likewise fail. James fails to show that Defendants were personally involved in his medical treatment or that any actions taken by medical personnel were a consequence of any policy established by the Defendants. Supervisory personnel cannot be liable under 42 U.S.C. § 1983 for the actions of their subordinates under a theory of respondeat superior. *Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978); *Greason v. Kemp*, 891 F.2d 829, 836 (11th Cir. 1990). Liability may be imposed on them, however, if James can demonstrate that they either personally participated in the acts comprising the alleged constitutional violation or instigated or adopted a policy that violated his constitutional rights. *See Hill v. Dekalb Reg'l Youth Detention Ctr.*, 40 F.3d 1176, 1192 (11th Cir. 1994); *Dolihite v. Maughon By and Through Videon,* 74 F.3d 1027, 1054 (11th Cir.1996).

James has come forward with no evidence sufficient to create a genuine issue of disputed fact as to whether Defendants violated his constitutional rights. James has not

demonstrated that Defendants had any involvement in his medical treatment or lack thereof and presents no evidence that their actions or inactions caused a constitutional deprivation. Moreover, James has pointed to no case which establishes that prison officials have a duty to directly supervise medical staff, to set policy for the medical staff or to intervene in treatment decisions where they are not informed by medical personnel that intervention is necessary to prevent a constitutional wrong. *See Vinnedge v. Gibbs*, 550 F.2d 926 (4th Cir. 1977) (a medical treatment claim cannot be brought against the managing officers of a prison absent allegations that they were personally connected with the denial of treatment).  For these reasons, Defendants' motion for summary judgment with respect to James' medical care and treatment claims is due to be granted.

*D.  The Americans With Disabilities Act ("ADA")Claim*

James' complaint alleges a violation of the ADA, 42 U.S.C. § 12101, *et seq*. The court understands James to bring this claim under Title II of the ADA, 42 U.S. C. § 12132, which pertains to public services and states: "[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." A "public entity" includes state prisons and "Title II authorizes suits by private citizens for money damages against public entities that violate § 12132."[5] *United States v.*

---

[5]In *United States v. Georgia*, 546 U.S. 151, 126 S.Ct. 877 (2006), the Supreme Court held that, "insofar as Title II creates a private cause of action for damages against the States for conduct that actually violates the Fourteenth Amendment, Title II validly abrogates state sovereign immunity." 126 S.Ct. at 882. The Court reasoned that, to the extent the plaintiff's Title II claims were based on conduct that constituted a constitutional violation, the state's immunity could be abrogated, but it declined to issue judgment on whether

*Georgia,* 546 U.S. 151, 126 S.Ct. 877 (2006); *Pennsylvania Dep't of Corr. v. Yeskey,* 524 U.S. 206, 210 (1998).

James' conclusory assertion that Defendants violated the ADA is insufficient evidence that he is a qualified individual with a disability under the ADA. His simple assertion that he is disabled is legally insufficient to establish this fact.[6] 42 U.S.C. § 12102(2); *Bragdon v. Abbott*, 524 U.S. 624, 630 (1998). *Cf. Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996) (the ADA is not a means to bring a claim of medical negligence, nor is it "violated by a prison's simply failing to attend to the medical needs of its disabled prisoners."); *Grzan v. Charter Hosp. of Northwest Indiana*, 104 F.3d 116, 121-23 (7th Cir. 1997) (ADA does not create a federal cause of action for prisoners challenging the medical treatment provided for their underlying disabilities). Further, James presents no evidence that he was denied any reasonable accommodation by reason of any disability[7] or was otherwise discriminated against by any defendant.[8] Moreover, there is no evidence that Defendants regarded James

---

the state's immunity could be validly abrogated when the state's conduct violated Title II, but not the Fourteenth Amendment. *Id.* at 880-882. No monetary relief, however, may be recovered from a defendant in his or her individual capacity under Title II of the ADA as individual defendants are not "public entities" under Title II of the Act.

[6] Attached to James' opposition filed August 15, 2005 is a letter he received from the Social Security Administration dated July 2, 2001. (*See* Doc. No. 18.) James asserts that this document proves that he is disabled. However, the submitted document (a notice of change in payment to Supplemental Security Income) does not reflect the basis on which James was considered a disabled individual nor is it proof that at the time he filed this action he was regarded as having a disability. (*See* Doc. No. 18).

[7] As noted, James was allowed use of a cane and had profiles for no prolonged walking or standing.

[8] To the extent that James asserts a claim of an "actual" violation of the Fourteenth Amendment, Title II of the ADA would abrogate the State's sovereign immunity and permit an action for damages against the State. See *Louisiana ex rel. Francis v. Resweber,* 329 U.S. 459, 463 (1947) (the Due Process Clause of the Fourteenth Amendment incorporates the Eighth Amendment's guarantee against cruel and unusual

as having a "disability" – *i.e.*, a "physical or mental impairment"– as those terms are defined under the ADA. Accordingly, Defendants should be granted summary judgment on James' ADA claim.

### III.  CONCLUSION

In light of the foregoing, it is the RECOMMENDATION of the Magistrate Judge that:

1. Defendants' motion for summary judgment, as supplemented, (Doc. Nos. 15, 21) be GRANTED;

2. Judgment be ENTERED in favor of Defendants and against Plaintiff;

3. This case be DISMISSED with prejudice; and

4. Costs of the proceeding be TAXED against Plaintiff for which execution may issue.

It is further

ORDERED that the parties shall file any objections to the Recommendation on or before **July 9, 2007**.  Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which a party objects.  Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a de novo determination by the

---

punishment). However, James must meet the deliberate indifference standard to prevail on his Eighth Amendment claims and the court has already determined that he has failed to do so.

District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982). *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982). *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (*en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit Court of Appeals handed down prior to the close of business on September 30, 1981.

DONE, this 26th day of July, 2007.

/s/ Susan Russ Walker
SUSAN RUSS WALKER
UNITED STATES MAGISTRATE JUDGE